IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

STONEY GLEN, LLC, ET AL.,

    Plaintiffs,

v.                                                           Civil Action No. 2:13cv8-HCM-LRL

SOUTHERN BANK AND TRUST CO.,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Southern Bank and Trust's ("Defendant") motion to dismiss certain allegations in Count One of Stoney Glen, LLC, John P. Wright, and Allen O. Keene's (collectively, "Plaintiffs") Amended Complaint. Docs. 24, 25; see also Doc. 20 ("Am. Compl."). Specifically, Defendant argues that Plaintiffs have inadequately pleaded a breach of the implied duty of good faith and fair dealing as a basis for a breach of contract claim. Doc. 29. On April 2, 2013, the Court convened a hearing and took this matter under advisement. The Court now **DENIES** Defendant's Motion for the reasons stated infra.

## I. BACKGROUND

### A. Factual Allegations[1]

This case concerns a dispute over the settlement of debts owed by Plaintiffs to Defendant.[2] Prior to bringing this case, Defendant had agreed to receive a $3,000,000 payment from Plaintiffs in settlement of a debt of approximately $9,000,000. Am. Compl. ¶¶ 19, 21. The

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiffs are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.
[2] There are three promissory notes—one for $375,000, one for $8,300,000, and one for $543,000—executed by the corporate plaintiff, and guaranteed by both natural plaintiffs. Am. Compl. ¶¶ 6-11.

1

settlement was embodied in the Debt Settlement Agreement ("DSA"), which was executed by the Plaintiffs on December 3, 2012, and by Defendant on December 7, 2012. Id. at ¶¶ 32, 34; see also Doc. 31, Attach. 2, 1–12 (hereinafter, "DSA").[3] As part of the transaction, Plaintiffs were going to secure a revolving line of credit with which they would make the $3,000,000 payment. Id. at ¶¶ 37–38. The line of credit was to be provided by HG Residential Finance, II, LLC, an affiliate of Harbor Group International, L.L.C. ("New Lender"). Id. A dry closing with the new lender was set for December 21, 2012, so Defendant could be paid before January 2, 2013. Id.

Throughout the transaction, as part of the negotiations, Plaintiffs had been providing financial statements to the Defendant in order to reach a fair agreement. Am. Compl. ¶ 20. On June 30, 2012, the individual plaintiffs, Messrs. Wright and Keene, each provided a personal financial statement to Defendant ("June Financial Statements"). Id. at ¶ 21. Mr. Wright prepared his statement himself, without the aid of an attorney, as he had always done. Id. at ¶¶ 22–25. He provided all the information that he believed Defendant wanted, and did not include a property held in tenancy-by-the-entirety with his wife, because the property was not subject to creditors' claims against him individually. He did this "because he was under the impression that [Defendant] required him to disclose only those assets and liabilities in his personal name and from which [Defendant] could potentially recover should it decide to pursue its claim on the Guaranties against Mr. Wright to Judgment." Id. at ¶ 23. After the DSA had been executed in early December 2012, Mr. Wright prepared another personal financial statement, current through October 31, 2012 ("October Financial Statement"). Id. at ¶ 35. This time—in accordance with the newly entered DSA—the personal financial statement included the property which he owned with his wife in a tenancy-by-the-entirety. Id. Mr. Wright also submitted an affidavit verifying this financial statement and an "Affidavit of Best Offer." Id. at 36.

---

[3] The DSA was filed under seal pursuant to the Court's Order of January 15, 2013. Doc 12.

2

On December 21, 2012, the same day as the dry closing, Defendant sent a letter terminating the DSA (the "termination letter") because, "[a]fter a detailed review of the DSA attachments, the [Defendant] believe[d] that the [Plaintiffs] [had] breach[ed] the DSA." Am. Compl. ¶ 44, Ex. A. Plaintiffs allege, and Defendant has not contested, that Defendant terminated the agreement pursuant to Section 1.03 of the DSA, which provides:

> If at any time after receiving any statement, document or Affidavit, [Defendant] determines or discovers that the Affidavit contained a material misrepresentation or omission, [Defendant] shall have its rights and remedies under this Agreement and a claim against the [Plaintiffs] under the Notes and Guaranties for all Debt as if this Agreement has not been made . . . [A] material misrepresentation or omission in the Affidavit . . . is either to (i) understate assets disclosed by an amount in excess of $100,000.00 or (ii) overstate liabilities disclosed by an amount in excess of $100,000.00.[4]

Am. Compl. ¶ 46 (quoting DSA at 3). Defendant claims that the omission of Mr. Wright's tenancy-by-the-entirety property, among other discrepancies in his June Personal Financial Statement wrongfully induced Defendant to accept the DSA, and therefore, justified Defendant's termination of the agreement under Section 1.03.[5] Doc. 25 at 4, 7; Am. Compl. ¶ 47.

### B. Procedural History

Plaintiffs filed their Complaint in the Circuit Court for the City of Norfolk, and Defendant removed the case to this Court on January 4, 2013. Doc. 1. After an attempt to streamline the litigation, see Docs. 7–12, the parties have arrived back at the beginning of the litigation: Plaintiffs moved to amend their complaint to again allege a breach of the DSA, among other things, on January 25, 2013, Doc. 17, and the Court granted the motion on January 30, 2013. Doc. 20. Now Defendant moves to dismiss the portion of the breach of contract claim

---

[4] There appears to be some dispute regarding, intera alia, the appropriate figure: $10,000 or $100,000. Compare Doc. 31 Ex. A, at 3 with Ex. A2, at 3. However, for the purposes of this motion, the Court will use Plaintiffs' figure.
[5] At the hearing, the parties represented that multiple mistakes, including a misallocation of a nonrecourse loan, had resulted in a difference of nearly $20,000,000 between the June and October Financial Statements—Mr. Wright's net worth was stated at roughly $4,000,000 in the June Statement and at roughly $24,000,000 in the October Statement.

3

premised on a breach of the implied duty of good faith and fair dealing. Docs. 24, 25. Plaintiffs responded in opposition on March 1, 2013, Doc. 26, and Defendant replied in support on March 7, 2013. Doc. 29. On March 7, 2013, Plaintiffs' counsel contacted the Court to request a hearing on the motion, and the Court convened a hearing on April 2, 2013, and heard argument from the parties. The matter is now ready for adjudication.

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994); see also FED. R. CIV. P 12(b)(6). In considering such a motion, a court should accept as true all well-pleaded allegations and view the claim in the light most favorable to the claimant. See De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (abrogated by Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (citation omitted). Indeed, the legal framework of a claim must be supported by factual allegations that "raise a right to relief above the speculative level." Id. at 1965. In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court expanded upon Twombly by articulating the two-pronged analytical approach to be followed in any Rule 12(b)(6) test.

4

First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. Id. at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. Id. (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." Id. at 1950–51. The plausibility standard demands more than a showing of "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. "In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (internal citations omitted).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, without converting the motion into one for summary judgment. However, there are a number of exceptions to this rule. Specifically, a court "may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed," without converting the motion into a motion for summary judgment. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint").

## III. ANALYSIS

Defendant's Motion addresses: (1) whether an implied duty of good faith and fair dealing exists in common law contracts in Virginia; and (2) whether Plaintiffs have adequately pleaded a breach of the implied duty of good faith and fair dealing, if it exists.

*1. Whether the Implied Duty of Good Faith Exists in Common Law Contracts in Virginia*

The United States Court of Appeals for the Fourth Circuit has consistently held that Virginia does recognize an implied duty of good faith and fair dealing in common law contracts.[6] See Wolf v. Fed. Nat. Mortg. Ass'n, No. 11-2419, 2013 WL 749652, at *8 (4th Cir. Feb. 28, 2013) (unpublished) ("In Virginia, every contract contains an implied covenant of good faith and fair dealing.") (quoting Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)); Virginia Vermiculite, 156 F.3d at 542 (recognizing the implied duty in a mining contract based on a Virginia Superior Court decision); SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of North Carolina, 806 F.Supp.2d 872, 893–95 (E.D.Va. 2011) (examining at length how state and federal courts in Virginia have acknowledged an implied duty of good faith and fair dealing in contractual relationships, and finding no reason to differentiate between contracts falling under the Uniform Commercial Code ("U.C.C.") and the common law); Land & Marine Remediation, Inc. v. BASF Corp., 2:11CV239, 2012 WL 2415552 (E.D. Va. June 26, 2012) (recognizing the duty in contracts regarding leases); Enomoto, 624 F. Supp. 2d at 450 (recognizing the implied duty in a space flight contract). But see Harrison v. US Bank Nat. Ass'n, 3:12-CV-00224, 2012 WL 2366163 (E.D. Va. June 20, 2012) ("Virginia [] does not

---

[6] Virginia law on the implied duty of good faith and fair dealing is not exceptionally clear. Plaintiffs rely heavily on CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 431 S.E.2d 277, for the assertion that Virginia recognizes the duty in common law contracts. See Id. at 28–29, 431 S.E.2d at 282. However, Defendant distinguishes CaterCorp as it discussed the "duties of good faith and fair dealing" as duties that an at-will employee might have owed an employer. Id. Defendant argues that extending this holding regarding a duty of employment into a notion that all contracts contain the duty is not clearly contemplated by CaterCorp. Nonetheless, the Fourth Circuit and this Court have been clear on the duty existing in all contracts, and absent an intervening Virginia decision which repudiates the Fourth Circuit and this Court's interpretation of Virginia law on the applied duty, the Court will apply that interpretation.

6

recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the Uniform Commercial Code.") (citing Greenwood Assocs. Inc. v. Crestar Bank, 248 Va. 265, 270, (1994)).[7]

A breach of the implied duty of good faith and fair dealing must be raised in a claim for breach of contract, as opposed to a claim in tort. See Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A., 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996). But "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." Ward's Equip., Inc. v. New Holland N. Am., Inc., 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997)."This is so under either the common law or the Uniform Commercial Code." Id. And "although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party." Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn., 156 F.3d 535, 542 (4th Cir. 1998). The duty can also be breached if the purported exercise of a contractual right is dishonest, as opposed to merely arbitrary. See Enomoto, 624 F. Supp. 2d at 450 (holding that the "claim [was] properly pled because . . . Plaintiff alleges that Defendant's actions were not merely unfavorable, but dishonest"); Charles E. Brauer Co., 251 Va. at 35, 466 S.E.2d at 386 (holding that the implied duty of good faith was not breached when, "arguably, the bank's conduct was arbitrary, but it was not dishonest.").

---

[7] However, Harrison improperly reads Greenwood. In Greenwood, the Virginia Supreme Court held that the statutory duty of good faith, codified in Virginia's version of the UCC, Va. Code Ann. § 8.1-203, was inapplicable to a non-UCC contract—a real estate contract. Greenwood, 248 Va. at 402. This is not the same as holding that there is no implied duty of good faith and fair dealing in such a contract. Indeed, a lower Virginia court had previously held, undisturbed, that such an implied duty existed in a real estate contract. Stepp v. Outdoor World Corp., Va. Cir. 106, 1989 WL 114387518, at *4 (Va. Cir. Ct. 1989); see also Levine v. Selective Ins. Co. of Am., 250 Va. 282, 286, 462 S.E.2d 81, 84 (1995) (reversing a grant of summary judgment and reviving a plaintiff's breach of contract claim premised on a breach of the implied duty of good faith and fair dealing in an insurance contract).

*2. Whether Plaintiffs Have Adequately Alleged a Breach of the Implied Duty of Good Faith*

In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant. Enomoto, 624 F. Supp. 2d at 450 (citing Charles E. Brauer Co., 251 Va. at 35, 466 S.E.2d at 386). Plaintiffs bring their breach of an implied duty of good faith and fair dealing claim as part of their count for breach of contract. Am. Compl. ¶ 53–61. Accordingly, Plaintiffs have raised the claim in the right context and the question becomes whether they have properly alleged a breach of the duty.

Plaintiffs allege that, in terminating the DSA, Defendant "acted in bad faith and against usual and prudent banking practices." Am. Compl. ¶ 59. The allegation of bad faith is a legal conclusion that stands only insofar as it is supported by factual allegations. Ashcroft, 129 S. Ct. at 1951. The supporting factual allegation is that Defendant's review of Plaintiffs' financial statements, and subsequent decision to terminate the DSA based on those financial statements, was against usual and prudent banking practices. The case law shows two ways in which the duty of good faith and fair dealing may be breached: (1) where a party has a clear contract right, even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly, see Charles E. Brauer Co., 251 Va. at 35, 466 S.E.2d at 386; Enomoto, 624 F. Supp. 2d at 450; (2) but where a party has discretion in performance, that party cannot act arbitrarily or unfairly, see Virginia Vermiculite, 156 F.3d at 542.

**A. Dishonest Conduct**

Plaintiffs do not allege that any of Defendant's conduct in the exercise of its rights was dishonest. While acting "against usual and prudent business practices" may be arbitrary, it is not dishonest, and will not support a claim for breach of the implied covenant of good faith and fair dealing if the action is taken pursuant to an explicit contractual right. Charles E. Brauer Co., 251

8

Va. at 35, 466 S.E.2d at 386. Cf. Enmoto, 624 F. Supp. 2d. at 450–51 ("Plaintiff alleges that Defendant's actions were not merely unfavorable, but actually dishonest. He alleges that Defendant purposefully failed to provide him with a space flight and purposely failed to inform him of the high likelihood of medical disqualification until after he had paid three or four payments that Defendant submits are non-refundable.") (citations omitted).

## B. Contractual Discretion

In a sense of the word, every exercise of a contractual right involves some exercise of "discretion"—either in determining whether a right has accrued or in deciding whether to exercise a right that has accrued. Accordingly, the legal distinction between an exercise of discretion and an exercise of a contractual right requires a survey of relevant case law.

In Virginia Vermiculite, a family contracted with a mining company for the sale of the mining rights to their land. 156 F.3d at 537–38. The amount the family received depended on the amount the mine produced, but the contract provided that the company had the "sole discretion" whether to mine the land. Id. at 541. The Fourth Circuit, applying Virginia law, held that donating the land to a trust—in such a way that it could never be mined, in order to frustrate a competitor—was a breach of the duty of good faith it owed to the family. Id. at 542. The court reasoned that the "implied duty of good faith is particularly important in the context of mining leases, where the landowners must necessarily leave the decisionmaking process to the expertise of mining companies." Id. at 542 (quoting HGSI v. Brandy Farm, Ltd., 32 Va. Cir. 98, 102 (Louisa Cty. 1993), petition refused, No. CH–4872 (Va. June 20, 1994)).

Conversely, in Charles E. Brauer Co., the Virginia Supreme Court held that, where a defendant bank had a right either to foreclose on encumbered inventory or to reduce its claim to a judgment, its decision to reduce its claim to a judgment, though more detrimental to the plaintiff, could not have been a breach of the duty of good faith, because it was an exercise of an

9

explicit contractual right. 251 Va. at 35, 466 S.E.2d at 386 ("When [] parties to a contract create valid and binding rights, one party does not breach the [] obligation of good faith by exercising such rights."). Likewise, In Mahoney v. NationsBank of Virginia, N.A., the plaintiff, a real estate developer, was developing three lots with a loan from the defendant, a bank. 249 Va. 216, 219, 455 S.E.2d 5, 7 (1995). The loan agreement provided that the bank would release each lot from collateralization when an amount of at least $150,000 was provided by the developer from the sale of the lot. Id. However, when the state of the real estate market prevented the developer from securing sales for the required amount, the bank refused to release the collateral and the sales could not be completed. Id. The developer claimed that the bank's refusal was arbitrary and a breach of its duty of good faith. Id. The court disagreed, and held that the decision could not be a breach of the duty of good faith because the bank had an explicit contractual right to withhold the release of collateral if the required amount was not paid. Id. at 220–21, 455 S.E.2d at 7–8.

Recently, in Land & Marine Remediation, Inc. v. BASF Corp., 2:11CV239, 2012 WL 2415552, at *1–2 (E.D. Va. June 26, 2012), this Court considered the matter of discretion in a defendant's decision to demand payment and subsequently terminate a plaintiff's lease because the plaintiff failed to perform under the lease by not paying certain costs, among other things. The plaintiff argued that defendant had breached the implied duty of good faith by initially tolerating nonpayment, but later requiring strict compliance. Id. at *11–13. The Court said:

> if exercising an express contractual right to demand payment or an express contractual right to issue a notice of default were permitted to be recast as a "discretionary" decision merely because the non-breaching party could opt not to exercise such express right, every contractual right would be subject to being recast as "discretionary."

Id. at *13. In BASF, the Court discussed a bankruptcy case that dealt with the same issue under similar facts—In re Buffalo Coal Co., 06-366, 2010 WL 724702 (Bankr. N.D. W. Va. Feb. 26, 2010). In Buffalo Coal, a power company terminated a coal supply agreement with a coal

company because the coal company became insolvent. Id. at *1. The contract between the parties provided that a party could declare the other party's insolvency a default and terminate the agreement. Id. at *2.[8] The coal company argued that because the power company had the discretion to declare the insolvency a default, the act was discretionary, and was subject to being exercised reasonably, according to the duty of good faith and fair dealing. The court rejected that argument, stating that the power company's "choice to exercise its contractual termination right cannot be altered by enervating the exercise of that right with a duty of good faith." Id. at *4.

Here, Plaintiffs argue that the implied duty of good faith and fair dealing required Defendant to employ "usual and prudent business and banking practices" in determining whether a financial statement had a material misrepresentation or omission, and by not doing so and then terminating the DSA, Defendant breached the duty. Am. Compl. ¶ 59. In BASF and Buffalo Coal, the courts explicitly rejected attempts to characterize the decision whether to exercise an accrued right as a matter of "contractual discretion." With their argument, however, Plaintiffs attempt to distinguish this case from BASF and Buffalo Coal by characterizing, not the decision to exercise a contractual right, but the determination of whether a contractual right had accrued as "contractual discretion." This particular argument appears to be novel, and neither party has cited a case that deals directly with it. Defendant simply argues that Plaintiffs' attempt to create discretion antecedent to the exercise of a contractual right is an end run around Virginia's clear rule that the exercise of an explicit contractual right is not subject to the duty of good faith and fair dealing. BASF, 2:11CV239, 2012 WL 2415552, at *13 (E.D. Va. June 26, 2012); Buffalo Coal, 06-366, 2010 WL 724702, at *4.

---

[8] The triggering event was labeled "Bankruptcy Proceeding," but was defined to include an inability to pay debts as they became due. Id.

11

However, in BASF there was no dispute that the tenant had failed to satisfy its original contractual obligations; in Buffalo Coal, there was no dispute that the coal company was insolvent; in Charles E. Brauer there was no dispute that the bank had accrued the remedy it exercised against the debtor; and in Mahoney there was no dispute that the bank had the right to withhold release of the lien on the debtor's property.[9] Accordingly, all these cases hold that, where a contractual right has accrued, its exercise cannot be a breach of the implied duty of good faith and fair dealing. None of these cases speak to whether the implied duty of good faith and fair dealing requires a party to be reasonable in ascertaining whether a contractual right has accrued. Because the accrual of Defendant's right to terminate the DSA was not committed to the occurrence of an objective, undisputed fact, but was rather committed to Defendant's "determin[ation] or discover[y] that the Affidavit contained a material misrepresentation or omission," this case is more similar to Virginia Vermiculite.[10] There, the mining of land was committed to the discretion of a mining company; here, the review of financial documents is committed to the discretion of a bank. Defendant's argument at the hearing that "it could have flipped a coin" is undermined by the holding in Virginia Vermiculite: the mining company could not decide to not mine land, and instead put the land in a trust, simply to get an advantage over a competitor. Both the deliberations there and here were committed to experts and were antecedent

---

[9] See BASF, 2:11CV239, 2012 WL 2415552, at *12 (E.D. Va. June 26, 2012) ("The undisputed evidence demonstrates that [the tenant] failed to satisfy its contractual obligations."); Buffalo Coal, 06-366, 2010 WL 724702, at *1 ("In an earlier summary judgment decision rendered by the court, it determined that Buffalo Coal was insolvent as that term was defined by the coal supply agreement, and that an event of default existed under the agreement."); Charles E. Brauer Co., 251 Va. at 32, 35, 466 S.E.2d at 384, 386 ("the debtor decided to cease business operations and to voluntarily liquidate its assets in order to pay its creditors" and "[w]hen a debtor is in default under a security agreement, a secured party has the option to foreclose, to reduce the claim to judgment, or to "otherwise enforce the security interest by any available judicial procedure.") (citing Va. Code. Ann.§ 8.9-501(1)); Mahoney, 249 Va. 216, 219, 455 S.E.2d 5, 7 ("The [debtors] concede that the Bank had the legal contractual right to act as it did").

[10] The DSA defined a material misrepresentation as an understatement of assets or overstatement of liabilities by $100,000. DSA § 1.03. However, the DSA did not define assets or liabilities, and a substantial portion of oral argument was devoted to Plaintiff's arguing that Defendant disregarded usual business practices in determining whether specific assets and liabilities omitted were of the type contemplated by the DSA.

to the exercise by the expert of a purported right—to mine or not mine, or to consummate or not consummate a settlement. A party to a contract can flip a coin to decide whether to exercise an accrued right, but cannot flip a coin to determine whether a right has accrued. The Court sees no reason to treat this case dissimilarly from Virginia Vermiculite. Accordingly, Plaintiffs have sufficiently pleaded a breach of the implied duty of good faith and fair dealing by alleging that Defendant acted "in bad faith and against usual and prudent business and banking practices" in determining that a financial statement contained a misrepresentation or omission. Am. Compl. ¶ 59.

## IV. Conclusion

Accordingly, because Plaintiffs have adequately alleged that Defendant inappropriately exercised contractual discretion, their claim of breach of the implied duty of good faith and fair dealing as a basis for a breach of contract claim is sufficiently pleaded. As such, the Court **DENIES** Defendant's Motion to Dismiss, Doc. 24.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: May 2nd, 2013