UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

STONEY GLEN, L.L.C.,
JOHN P. WRIGHT, and
ALLEN O. KEENE

  Plaintiffs and Counter-Claim Defendants,

v.                    Civil Action No. 2:13-cv-00008

SOUTHERN BANK AND TRUST COMPANY,

  Defendant and Counter-Claim Plaintiff.

## SOUTHERN BANK AND TRUST COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Defendant, Southern Bank and Trust Company ("Southern Bank"), by counsel, files this Memorandum in Opposition to Plaintiffs' Motion to Compel (ECF 45). For the reasons set forth below, Southern requests that this Court deny Plaintiffs' Motion to Compel.

### BACKGROUND

In late December 2012, Stoney Glen, LLC, John P. Wright, and Allen O'Keene ("Plaintiffs") filed a complaint against Southern Bank in the Circuit Court for the City of Norfolk. Southern Bank subsequently removed the action to this Court. Following removal, Plaintiffs filed an amended complaint and a Second Amended Complaint (ECF 43) ("Amended Complaint"), which is now the operative complaint in this litigation.

Plaintiffs have asserted three counts in their Amended Complaint. In Count I, which is the Count relevant to their Motion to Compel, Plaintiffs claim that Southern Bank breached a debt settlement agreement between it and Plaintiffs ("Debt Settlement Agreement") in two ways. First, they claim Southern Bank breached the Debt Settlement Agreement by failing to execute

all required documentation and wrongfully terminating the agreement without proper cause. (Am. Compl. ¶¶ 56, 57). Second, they allege that Southern Bank breached an implied duty of good faith and fair dealing by terminating the Debt Settlement Agreement based on misleading documentation Plaintiffs provided to Southern Bank, without following "usual and prudent business and banking practices" to evaluate that documentation. (Am. Compl. ¶ 59).

Southern Bank filed a Motion to Dismiss Plaintiffs' good faith and fair dealing claim on February 20, 2013.[1] In this motion, Southern Bank argued, in part, that Plaintiffs cannot assert a claim for breach of an implied duty of good faith and fair dealing when Southern Bank merely exercised a right expressly provided to it in the Debt Settlement Agreement. (ECF 25, at 7). The Court denied Southern Bank's motion on May 2, 2013. (ECF 35). According to the Court, there can be no breach of good faith and fair dealing in exercising an accrued contractual right, but the duty of good faith and fair dealing may be relevant when assessing whether a contractual right has accrued as an initial matter. (*Id.* at 12 – 13).

On May 17, 2013, Southern Bank promptly filed a Motion for Reconsideration and/or Clarification of the Court's May 2nd ruling. (ECF 38). In this motion, Southern Bank has argued, among other things, that there is no basis in Virginia law to hold that a party can be found to have validly exercised a contractual right, yet, nonetheless, be deemed to have acted in bad faith in determining whether that right has accrued. The parties have fully briefed Southern Bank's motion and it is currently ripe for adjudication.

This procedural history provides a backdrop for Plaintiffs' Motion to Compel. Plaintiffs' motion involves three interrogatories that it served on Southern Bank. These interrogatories are as follows:

---

[1] At the time of the motion, Plaintiffs' Amended Complaint, as opposed to the Second Amended Complaint, was the operative complaint in this litigation. The allegations in these two complaints are substantially similar.

3. "Describe in detail what Southern did to evaluate the June 2011 PFS[2], the June 2012 PFS, and the October 2012 PFS, including who performed the evaluations and the time frames within which the evaluations were conducted."

4. "Give every reason that Southern chose not to perform under the DSA."[3]

5. "To the extent that Southern claims that there is a misrepresentation or anything misleading in any of the PFSs provided to it by any of the Plaintiffs, describe in detail why Southern believes there is a misrepresentation or something misleading, including how Southern decided it was a misrepresentation or was misleading."

Southern Bank objected to the interrogatories above on a limited number of grounds.

With respect to interrogatories four and five, in addition to asserting objections, Southern Bank directed Plaintiffs to Southern Bank's answer to interrogatory number six. Southern Bank's answer to interrogatory number six discussed the misleading statements that Plaintiffs have made to Southern Bank that provided grounds for termination of the Debt Settlement Agreement. As a result, the reference to interrogatory number six was responsive to interrogatories four and five. Nonetheless, Southern Bank has agreed to provide an additional supplemental response to interrogatories number four and five in order to address the issues Plaintiffs have raised in their Motion to Compel. This agreement renders moot Plaintiffs' requests with respect to interrogatories four and five and the Court should deny the motion to compel with respect to those interrogatories on that ground.

With respect to interrogatory number three, Southern Bank believes Plaintiffs' motion to compel should be denied. Southern Bank has asserted valid objections to that interrogatory and Plaintiffs' arguments to the contrary are misguided. Southern Bank discusses these issues in detail below.

---

[2] "PFS" is an acronym for personal financial statement. The multiple personal financial statements at issue are among the documents that Southern Bank asserts are misleading and contain material misrepresentations.

[3] "DSA" is an acronym for Debt Settlement Agreement.

## ARGUMENT

### 1. Southern Bank has asserted valid objections to interrogatory number three

In interrogatory number three, Plaintiffs ask Southern Bank to "[d]escribe in detail what Southern did to evaluate the June 2011 PFS, the June 2012 PFS, and the October 2012 PFS, including who performed the evaluations and the time frames within which the evaluations were conducted." In response, Southern Bank objected on the following grounds:

(1) Southern Bank objected to the extent the interrogatory seeks information regarding activities performed by Bank of the Commonwealth's representatives, of which Southern Bank is unaware;

(2) Southern Bank objected to the extent the interrogatory sought information protected from discovery by the attorney-client privilege, the work product doctrine, the common interest privilege, and or any other applicable privileges or protections; and

(3) Southern Bank objected to the discovery as not reasonably calculated to lead to the discovery of admissible evidence.

Southern Bank noted, however, that it would reconsider its objection regarding the interrogatory not being reasonably calculated to lead to the discovery of admissible evidence if the Court denies Southern Bank's currently pending Motion for Reconsideration. Because Southern Bank has asserted valid objections to interrogatory number three, the Court should deny Plaintiffs' Motion to Compel.

    a. Bank of the Commonwealth's Actions

In Plaintiffs' interrogatories to Southern Bank, they define "Southern" as "Southern Bank and Trust Company, and where applicable, its predecessor-in-interest, Bank of the Commonwealth." Additionally, in interrogatory number three Plaintiffs request information on what "Southern" did to evaluate their June 2011 PFS, among others. Regulatory authorities closed Bank of the Commonwealth on September 23, 2011. *See Update to Notice of Financial Institutions for Which the Federal Deposit Insurance Corporation has been Appointed Either Receiver, Liquidator, or Manager*, 76 Fed. Reg. 60835 (Sept. 30, 2011). Southern Bank did not

4

purchase any of Bank of the Commonwealth's assets, including the loans and guaranties at issue, prior to September 23, 2011. Thus, Southern Bank was not involved in the loan at issue in June 2011. Plaintiffs' request for information on the June 2011 PFS could certainly be seeking information on Bank of the Commonwealth's actions with respect to the loan at issue.

Southern Bank's served a valid objection on Plaintiffs when it objected to any request seeking information on activities performed by Bank of the Commonwealth, of which it is unaware. In Plaintiffs' Memorandum in Support of its Motion to Compel, they argue that "Stoney Glen did not ask" for a response regarding Bank of the Commonwealth "so [Southern Bank's objection] is to an interrogatory that does not exist." (Mem. Supp., at 3). That is plainly incorrect. Regardless of whether Plaintiffs intended to seek information regarding Bank of the Commonwealth, that is precisely what they did. Plaintiffs' motion should be denied.

      b. Privilege

Southern Bank also objected to Plaintiffs' third interrogatory to the extent they sought information protected by attorney-client privilege, work product doctrine, or other applicable privileges. In their Memorandum in Support of their Motion to Compel, Plaintiffs assert that they are "merely asking what the Defendant did to evaluate three financial statements which are the basis for the issues in this case" and they are "not asking for attorney thoughts or impressions or any other non-discoverable information." (Mem. Supp., at 3). Plaintiffs' concession, however, is not apparent in the interrogatory itself. Rather, the interrogatory could certainly seek privileged information.

For example, Plaintiffs are aware that Southern Bank's counsel was involved in negotiations with Plaintiffs regarding the personal financial statements they submitted to Southern Bank in December of 2012. To the extent Plaintiffs' third interrogatory seeks

information on Southern Bank's counsel's evaluation of Plaintiffs' personal financial statements, those activities would certainly be entitled to work product protections, at a minimum. Thus, Southern Bank's objection is not "mere boiler-plate," as Plaintiffs contend. (Mem. Supp., at 3). Rather, it is a reasoned objection in light of the scope of Plaintiff's interrogatory.

    c. <u>Not Reasonably Calculated</u>

Southern Bank also objected to interrogatory number three on the ground that Plaintiffs' request for a description, in detail, regarding what Southern Bank did to evaluate the relevant personal financial statements (and who performed the evaluations at what times), was not reasonably calculated to lead to admissible evidence in this case. Southern Bank's objection was two-tiered. First, the interrogatory is not reasonably calculated to lead to discovery of admissible evidence on Plaintiffs' "standard" breach of contract claim.[4] Second, Southern Bank believes the Court should reconsider its decision regarding Southern Bank's motion to dismiss (for the reasons set forth in detail in its supporting brief) and, during the pendency of Southern Bank's Motion for Reconsideration, Plaintiffs are not entitled to discovery on Southern Bank's mental processes to prove a breach of contract claim.

    i. The process Southern Bank engaged in to evaluate the personal financial statements at issue is irrelevant to the objective question of whether Southern Bank breached the Debt Settlement Agreement

Plaintiffs' breach of contract claim in Count I has two prongs. In the first prong, Plaintiffs claim that Southern Bank's actions violated the clear terms of the settlement agreement. (Am. Compl. ¶¶ 54-58). As Plaintiffs are aware, the central issue upon which this prong turns is whether Plaintiffs provided Southern Bank with settlement documentation that proved to be false or misleading in connection with the Debt Settlement Agreement. Plaintiffs

---

[4] By using "standard," Southern Bank is referring to Plaintiffs' claim that Southern Bank breached the express terms of the Debt Settlement Agreement, as opposed to the allegation that Southern Bank breached an amorphous implied duty of good faith.

claim that, without regard to their breach of implied duty of good faith allegations, they are "still entitled to receive discovery responses to learn if the [personal financial] statements actually contained a misrepresentation given that the Defendant has alleged misrepresentations form the basis for its cancellation." (Mem. Supp., at 3-4).

Interrogatory number three, however, is not targeted at whether the personal financial statements actually contained a misrepresentation. Moreover, Southern Bank has already provided to Plaintiffs in its response to interrogatory number six a discussion of the information Plaintiffs provided to Southern Bank that was false or misleading.

Rather, interrogatory number three seeks details on the *process* Southern Bank used to evaluate the personal financial statements at issue. Southern Bank's process, however, is irrelevant to the objective question of whether a misleading statement or material misrepresentation existed. *See, e.g.*, *SEC v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244-45 (11th Cir. 2012) (holding that proving a violation of § 10(b) of the Exchange Act requires proof of a material misrepresentation and that the "Supreme Court noted the 'universal[] agree[ment]' that materiality is an 'objective' inquiry involving the significance of an omitted or misrepresented fact to a reasonable investor") (citations omitted; emphasis added); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) (noting that under the Fair Debt Collection Practices Act, the court, "in determining whether a statement qualifies as misleading, employs an objective test") (citations omitted; emphasis added*); Leatherbury v. Dep't of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008) ("A charge that an employee knowingly supplied wrong information with an intent to defraud the agency requires first that the agency prove that the information submitted included a false statement. The test here is objective and is made without regard to the employee's subjective understanding or knowledge.") (emphasis added);

7

*United States v. Goberman*, 329 F. Supp. 903, 905 (M.D. Pa. 1971) (holding that the failure to list certain information on a financial statement renders it an "objectively false statement of material facts") (emphasis added). Because Plaintiffs' "standard" breach of contract claim turns on an objective question of whether a misrepresentation or misleading statement existed, and Southern Bank's process is irrelevant to that question, the Motion to Compel should be denied.

Plaintiffs also argue in their brief that interrogatory number three is relevant to the merits of their "standard" breach of contract claim because they are entitled to know whether Southern Bank was "deceived by misrepresentations in the financial statements." That is also legally incorrect. (Mem. Supp., at 4). Whether Southern Bank was *actually deceived*, has no bearing on whether Plaintiffs provided Southern Bank with documentation that was false, misleading, or contained material misrepresentations. *See, e.g. United States v. Mitchell*, 15 F.3d 953, 955-56 (10th Cir. 1994) (holding that in a criminal, bank fraud prosecution over making a false statement to a bank, the fact finder could determine whether a false statement was made and it "was not necessary to prove that the bank was actively influenced by the misleading statement"). Southern Bank need not show that it actually deceived by the documents Plaintiff provided if the Court determines that the documents themselves were false or misleading. Therefore, the Court should deny Plaintiffs' motion.

      ii. Southern Bank's process is irrelevant to the question of whether Southern Bank validly exercised its contractual right to terminate the Debt Settlement Agreement

Plaintiffs argue with respect to the good faith and fair dealing prong of their breach of contract claim that they are "undeniably entitled to learn through discovery who evaluated the three personal financial statements at issue and what that person or persons did in such an evaluation." (Mem. Supp., at 3). To reach this conclusion, Plaintiffs have asserted that regardless of whether the statements they provided to Southern Bank in connection with the

8

execution of the Debt Settlement Agreement were false or misleading, Southern Bank could still have breached the Debt Settlement Agreement if it did not utilize "usual and prudent business and banking practices" in assessing those statements. And, thus, they are entitled to inquire in Southern Bank's banking practices with respect to the personal financial statements.

As Southern Bank has argued in its Motion for Reconsideration and/or Clarification, the express terms of the Debt Settlement Agreement allow Southern Bank to terminate the agreement upon being provided a material misrepresentation or false or misleading statement, among other reasons. These are objective considerations. Virginia law does not permit a party to transform a breach of contract action that turns on objective considerations into a subjective inquiry of the allegedly breaching party's subjective process in evaluating whether to exercise its contractual rights. If that were so, nearly every contract action could be transformed into a subjective duty of good faith claim. These issues are currently pending in Southern Bank's Motion for Reconsideration and/or Clarification of the Court's May 2nd ruling. This Court's resolution of that motion should provide guidance to the parties that will be of assistance in evaluating the issues raised by Plaintiffs' Motion to Compel. Plaintiffs are not entitled to unfettered discovery into Southern Bank's thought processes during the pendency of this motion.

## CONCLUSION

For the reasons set forth above, Southern Bank respectfully requests the Court deny Plaintiffs' motion to compel with respect to interrogatory number three and deem the motion moot with respect to interrogatories four and five.

Respectfully submitted,

**SOUTHERN BANK AND TRUST COMPANY**

By:        */s/ David M. Gettings*
           Of Counsel

Jonathan L. Hauser, Esquire
VSB No. 18688
Jeffrey H. Gray, Esquire
VSB No. 22304
David M. Gettings, Esquire
VSB No. 80394
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
(757) 687-7747
(757) 687-1545 – Fax
david.gettings@troutmansanders.com
*Counsel to Southern Bank and Trust Company*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of July, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will deliver a true and correct copy of the foregoing document via CM/ECF to the following:

Adam Casagrande, Esquire
VSB No. 46726
Scott C. Miller, Esquire
VSB No. 77088
WILLIAM MULLEN
999 Waterside Drive
Suite 1700
Norfolk, VA 23510
Telephone: (757) 622-3366
Facsimile: (757) 629-0660
acasagrande@williamsmullen.com
*Co-Counsel for Stoney Glen, L.L.C., John P. Wright and Allen O. Keene*

Wyatt B. Durrette, Jr., Esq.
J. Buckley Warden, IV, Esq.
DurretteCrump, PLC
1111 East Main Street, 16th Floor
Richmond, VA 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@durrettecrump.com
bwarden@durrettecrump.com
*Co-Counsel for Stoney Glen, L.L.C., John P. Wright and Allen O. Keene*

                                                   /s/ *David M. Gettings*