UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

Stoney Glen, LLC,
John P. Wright, and
Allen O. Keene,

        Plaintiffs,

v.                                       Civil Action No. 2:13cv00008

Southern Bank and Trust
Company,

        Defendant.

**PLAINTIFFS' MEMORANDUM IN REPLY TO
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Stoney Glen, LLC ("Stoney Glen"), John P. Wright, and Allen O. Keene (collectively, "Plaintiffs"), by counsel, file this Memorandum in Reply to Defendant's Opposition to Plaintiffs' Motion to Compel and in support thereof state the following:

**ARGUMENT**

At the time Plaintiffs filed the Motion to Compel ("Motion") (Docket No. 45), Southern Bank and Trust Company ("Southern") refused to provide responsive answers to interrogatories number three, four and five. As stated in its Memorandum in Opposition to Plaintiffs' Motion to Compel ("Opposition Brief") (Docket No. 49), since filing the Motion, Southern has agreed to provide additional supplemental responses to interrogatories number four and five. However, as of the date of this filing, Plaintiffs have not received these supplemental responses.

The remaining issue left unresolved is whether Southern is entitled to withhold its response to interrogatory three, which states, "Describe in detail what Southern did to evaluate the June 2011 PFS, the June 2012 PFS, and the October 2012 PFS, including who performed the

evaluations and the time frames within which the evaluations were conducted." As its response is relevant to Plaintiffs' claims—regardless of the outcome of Southern's Motion for Reconsideration and/or Clarification ("Motion for Reconsideration")—the Court should enter an order overruling its objections and compelling Southern to respond to interrogatory number three.

I.  **Southern should be compelled to answer with non-privileged, knowable information.**

Southern makes three objections to responding to interrogatory number three. Its first two objections are based on (i) Southern not knowing the actions taken by the Bank of the Commonwealth and (ii) privilege. As stated in the Memorandum in Support of Motion to Compel (Docket No. 46), Plaintiffs seek the knowable, non-privileged information that is responsive to interrogatory three. The interrogatory is not directed at obtaining privileged information or information that is only knowable to Bank of the Commonwealth. To the extent these first two objections have any merit and tangentially implicate one of these issues, a response notwithstanding these objections should be compelled.

With respect to its objection based on it not knowing the activities of Bank of the Commonwealth, Southern argues that its objection is valid because of the way Plaintiffs' discovery defines "Southern". (Opp'n Br. at 4-5.) Plaintiffs' definition of "Southern", however, is worded to include, "*where applicable*, [Southern's] predecessor-in-interest, Bank of the Commonwealth," (emphasis added.) By its terms, where is it not applicable, as here, the definition of "Southern" does not include Bank of the Commonwealth. Southern also argues that because it did not purchase any Bank of the Commonwealth assets until September 23, 2011, by seeking information concerning the June 2011 personal financial statement Plaintiffs are necessarily seeking Bank of the Commonwealth information. (*Id.*) This argument, however, is

based on faulty logic. Even though Southern did not purchase any assets until after the June 2011-dated personal financial statement does not mean that Southern did not thereafter evaluate the June 2011 personal financial statement. In fact, other discovery has shown that Southern did evaluate the June 2011 personal financial statement. Interrogatory number three seeks information concerning what Southern did to evaluate the personal financial statements and Southern should be compelled to respond.

With respect to its objection based on privilege, Southern argues that interrogatory three "could certainly seek privileged information." (Opp'n Br. at 5.) Even if a response *could* implicate privileged information, Plaintiffs defined the scope of the discovery to exclude such privileged information or knowledge ("The following Interrogatories and Requests for Production call not only for the knowledge of Southern, but also for all knowledge that is available to Southern by reasonable inquiry, including inquiry of Southern's agent's or representative's, including any agents or representatives acting on its behalf, and if not privileged, Southern's attorneys."). Even if its response to interrogatory number three could potentially include privileged information, Southern should be compelled to respond with the non-privileged information.

## II.  Interrogatory number three seeks relevant information.

The main thrust of the disagreement between the parties is Southern's argument that what it did to evaluate the personal financial statements, who performed such evaluations, and when such evaluations were done is not reasonably calculated to lead to the discovery of admissible evidence in this case. (Opp'n Br. at 6.) While it does not contend that this information would not be relevant to the Plaintiffs' claim for breach of the duty of good faith and fair dealing, it claims that unless and until the Court denies its Motion for Reconsideration, Plaintiffs are not

entitled to this information. These two positions, however, are contradictory. In its current posture, this case consists, in part, of the breach of the duty of good faith and fair dealing claim. Thus, the information sought *is* reasonably calculated to lead to the discovery of admissible evidence in the case and Southern should be compelled to answer. Furthermore, regardless of the Court's ruling on the Motion for Reconsideration, the information sought is relevant to the breach of contract claim and Southern should be compelled to answer on this basis as well.

      A.     <u>The breach of the duty of good faith and fair dealing is an active claim in the case.</u>

Although Southern filed a Motion for Reconsideration asking the Court to reconsider its denial of Southern's Motion to Dismiss the Plaintiffs' breach of good faith and fair dealing claim, the Court's current order is controlling. As such, and inasmuch as Southern does not deny that the information sought in interrogatory number three is relevant to this claim, it should be compelled to respond. Southern's Opposition Brief addresses this contention by merely rehashing its arguments made in the Motion for Reconsideration and claiming, without authority, that "Plaintiffs are not entitled to unfettered discovery into [Southern's] thought processes during the pendency of [the Motion for Reconsideration]." (Opp'n Br. at 9.) Unless and until the Court grants the Motion for Reconsideration, the order keeping the cause of action for breach of the duty of good faith and fair dealing in the case is controlling and Southern should therefore be compelled to respond to interrogatory number three.

      B.     <u>The terms of the Debt Settlement Agreement make the information sought by interrogatory number three relevant to whether Southern breached.</u>

Southern contends that its response to interrogatory number three is irrelevant to Plaintiffs' breach of contract claim; however, it mischaracterizes the focus of the relevant inquiry. Plaintiffs' breach of contract claim alleges that Southern improperly terminated the Debt Settlement Agreement ("DSA" or "Agreement"). Southern's Opposition Brief focuses on

whether a misleading statement or material misrepresentation existed regardless of when or how it was discovered.[1]  The express language of the DSA, however, makes the proper inquiry when (if ever) and how Southern determined that there was a qualifying misleading statement or material misrepresentation in any of the relevant personal financial statements that would trigger its right to terminate the DSA.  Therefore, Southern's process in evaluating the June 2011, June 2012 and October 2012 personal financial statements is clearly relevant and interrogatory number three is reasonably calculated to lead to the discovery of admissible evidence for Plaintiffs' breach of contract claim.

Southern contends that Plaintiffs breached the terms of Sections 1.03 and 2.01[2] of the DSA, which entitled it to terminate the Agreement.  Importantly however, the terms of these sections of the DSA require more than just the existence of an alleged material misrepresentation or misleading statement for Southern to terminate the Agreement.  These sections require that Southern know of, investigate, and reasonably believe that there is a material misrepresentation or misleading statement.  Thus, despite its argument to the contrary, the express terms of the DSA make relevant whether Southern was actually deceived prior to terminating the Agreement.[3]

---

[1] Because Southern's Opposition Brief is focused on the wrong point, the cases it cites on the objective standard by which certain terms are judged is irrelevant.  Each case cited by Southern discusses the terms "misleading", "false", and "material" when they appear in a statute, not a contract and not when the contract contains the language that is employed in the DSA, which expressly makes these terms subjective to the extent that they must be known and believed by Southern at the time it took action.

[2] In response to interrogatory number six ("To the extent that Southern contends that any part of any PFS or other information provided to Southern by Plaintiffs constitutes a breach of the DSA, describe in detail each such piece of information and explain what section of the DSA Southern alleged is breached by each specific part of the PFS or other information"), Southern cites sections 1.03 and 2.02 rather than 2.01; however, because section 2.02 is the remedies provision triggered by an "Event of Default", which is defined in and by section 2.01, Plaintiffs refer to section 2.01 as the section that identifies the alleged breach that Southern relies upon when claiming section 2.02 relief.

[3] If Southern was not actually deceived, it cannot claim that a certain statement in a personal financial statement "proved to be false or misleading." *See* discussion, *infra*.

Pursuant to section 1.03 of the DSA, "If at any time after receiving any statement, document or Affidavit, Southern *determines or discovers* that the Affidavit contained a material misrepresentation or omission, Southern shall have its rights and remedies under this Agreement . . . ." DSA, at 3 (emphasis added). By its express terms, in order for Southern to have relied upon a claimed material misrepresentation as the reason for terminating the DSA, Southern must have *first* determined or discovered that one actually exists. In other words, Southern's process and its timing of evaluating the personal financial statements are directly and critically relevant to Plaintiffs' claim for breach of contract.

Furthermore, the other provision upon which Southern relies to justify its termination of the DSA makes the information sought in interrogatory number three even more relevant and reasonably calculated to lead to the discovery of admissible evidence. Section 2.01 of the DSA states:

> Notwithstanding any other provision of this Agreement, Southern may, in its sole discretion, without notice or further action of any kind, *begin* the exercise of its rights and remedies immediately upon or any time *following the occurrence <u>and</u> continuation* of any one or more of the following events of defaults (individually, each "Event of Default" and collectively, the "Events of Default"):
> (a) Should any Obligor breach of default under any covenant, condition, or agreement made under this Agreement or the other Settlement Documentation;
> (b) Should any representation or warranty made in this Agreement or other Settlement Documentation *prove to be* false or misleading;
> (c) Should any Affidavit or any report, certificate, financial statement, or other document furnished to Southern prior to the execution of, or pursuant to the terms of this Agreement *prove to be* false or misleading;
> (d) If any Obligor fails to deliver any document he/it is required to deliver by this Agreement, and such failure continues for thirty (30) days after notice from Southern;

DSA, at 5 (emphasis added). Therefore, pursuant to the terms of this section, Southern can only terminate, i.e. "begin the exercise of its rights and remedies," after not only the event of default exists, but after it also continues to exist. If it does not continue to exist—due, for example, to

Southern's investigation or subsequent explanation—it is not an event of default that could trigger termination because it did not continue to be false or misleading. Stated differently, it did not "prove to be" false or misleading. The duration that the event of default must continue exist is unclear, but it certainly makes Plaintiffs' inquiry into the process and timing of Southern's evaluations of the personal financial statements relevant.

Moreover, the fact that the applicable subsection—subsection (c)—requires that the Affidavit, report, etc. ***prove to be false or misleading*** necessarily implies that Southern must do some investigation, pursuant to which it determines whether it would be justified in claiming something is an event of default. If Southern, without any investigation or reasonable basis, believed a statement in a personal financial statement to be false or misleading, but upon its evaluation of the personal financial statement, it was proved that this statement was neither false nor actually misleading, the DSA does not permit Southern to justify its termination of the Agreement on this basis. Plaintiffs have a right to discover this information, which a full response to interrogatory number three would reveal. Therefore, the Court should order Southern to respond.

Southern's position is contrary to the plain language of the DSA and violates a cardinal rule of contract construction that a contract is to be given reasonable and rational interpretation and not one that is absurd. *Providence Square Assoc., LLC, et al. v. G.D.F., Inc. t/a Rite Aid*, 211 F.3d 846, 852 (4th Cir. 2000) ("'the construction [of a contract] adopted should be reasonable, and absurd results are to be avoided.'" (quoting *Transit Cas., Co. v. Hartman's, Inc.*, 218 Va. 703, 708, 239 S.E.2d 894, 896 (1978))). Southern's position means that the parties intended to allow Southern to terminate the DSA whimsically for no known reason and put the already financially pressed borrowers to the test of prevailing in litigation on the issue of whether they

violated the Agreement. Given that the language of the Agreement is easily interpreted to establish terms that are rational, logical and fair for both parties, Southern's strained and bizarre interpretation must be rejected.

WHEREFORE, Plaintiffs respectfully request the Court enter an order overruling Southern's objections to interrogatory number three; compelling Southern to respond to interrogatory number three; and granting Plaintiffs such other and further relief as the Court deems just and proper.

Date: August 5, 2013

STONEY GLENN, LLC,
JOHN P. WRIGHT, and
ALLEN O. KEENE,

By  /s/ Brittany J. Berlauk
    Of Counsel

Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
J. Buckley Warden IV, Esquire (VSB No. 79183)
Brittany J. Berlauk, Esquire (VSB No. 80131)
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@durrettecrump.com
bwarden@durrettecrump.com
bberlauk@durrettecrump.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of August, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David M. Gettings, Esquire
david.gettings@troutmansanders.com
Jeffrey H. Gray, Esquire
jeffrey.gray@troutmansanders.com
Jonathan L. Hauser, Esquire
jonathan.hauser@troutmansanders.com

        /s/ Brittany J. Berlauk
Brittany J. Berlauk, Esquire (VSB No. 80131)
DurretteCrump PLC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
bberlauk@durrettecrump.com