IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED

OCT − 2 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**STONEY GLEN, LLC, ET AL.,**

    Plaintiffs,

v.                                        Civil Action No. 2:13cv8-HCM-LRL

**SOUTHERN BANK AND TRUST CO.,**

    Defendant and Counterclaim Plaintiff.

### ORDER AND OPINION

These matters are before the Court on Southern Bank and Trust Company's ("Defendant" or "Bank") Motion for Leave to Amend Counterclaim ("Motion to Amend"), Doc. 61, and Motions to Compel Responses from third-party Barnes, Brock, Cornwell & Heilman, PC, Doc. 66, and from Plaintiff John P. Wright (collectively "Motions to Compel"). Doc. 68. On September 26, 2013, the Court conducted a hearing to address these matters. After careful consideration of the parties' briefs and oral argument, the Court ruled from the bench and hereby issues this Order detailing its rulings.

    I.      **BACKGROUND AND PROCEDURAL HISTORY**

Upon Defendant's termination of a debt settlement agreement ("DSA"), debtors Stoney Glen, LLC, John P. Wright, and Allen O. Keene's (collectively, "Plaintiffs") filed suit for breach of contract, among other things. See Doc. 43 ("Am. Compl.").[1] Plaintiffs allege that Defendant lacked the legal right to terminate the DSA because (1) there was no material breach of the DSA by Plaintiff and because (2), in asserting a material breach and not proceeding with its duties under the DSA, Defendant was acting in bad faith having not fairly considered financial

---

[1] Technically, this document is Plaintiff's Second Amended Complaint, but any changes between this Complaint and the one originally filed are not at issue.

1

statements submitted by Plaintiff. Am. Compl. ¶¶ 58, 59. On January 4, 2013, by way of Answer, Defendant affirmatively alleged that Plaintiffs are guilty of unclean hands, that Bank had a right to cancel the DSA due to Plaintiffs' misrepresentations or omissions concerning their finances, and that as there is an adequate remedy at law, thus no equitable relief can be granted. See Doc. 4. Concomitantly, Defendant[2] filed a Counterclaim ("Countercl.") alleging that Plaintiffs' failure to repay the loan from Bank upon demand constituted a breach of contract. Doc. 5.

Thereafter, Defendant moved to have Plaintiffs' second claim, premised on breach of the implied duty of good faith and fair dealing (the "Duty"), dismissed for failure to state a claim. See Doc. 24; see also Fed. R. Civ. P. 12 (b)(6). After that motion was fully briefed and the Court heard oral argument, the Court issued an Opinion and Order, Doc. 35, denying the motion and holding that, at the then existing procedural posture, Plaintiff had adequately alleged a breach of the Duty.

On May 17, 2013, Defendant moved the Court to reconsider its ruling on Defendant's Motion to Dismiss. See Doc. 37. Plaintiff responded on May 28, 2013, and Defendant replied on June 3, 2013. See Docs. 39, 40. On August 27, 2013, the Court issued an Opinion and Order denying Defendant's Motion for Reconsideration, Doc. 53, as well as Plaintiffs' Motions to Compel Discovery, Doc. 45, and to Expedite the Briefing and Hearing on Plaintiffs' Motion to Compel, Doc. 47, as they were dependent upon the resolution of Defendant's Motion for Reconsideration and thus rendered moot by the Court's ruling.

On August 26, 2013, Plaintiffs served a subpoena on Mr. Vick—an independent contractor who had assisted Defendant with problem loan resolutions and delinquencies. On

---

[2] While technically Defendant is also the "Counter-Claim Plaintiff," for the sake of clarity in this Opinion and Order, each party will retain their original party designations.

2

August 28, 2013, Defendant filed a Motion to Quash, Doc. 54, along with a Motion to Expedite the Briefing Schedule and Hearing on its Motion to Quash. Doc. 56. The Court granted-in-part and denied-in-Defendant's part Defendant's Motion to Expedite by scheduling a hearing for September 5, 2013 at 2:30 p.m., but denying Defendant's request to expedite the briefing schedule. Doc. 58. After the September 5 hearing in which Defendant conceded that Plaintiffs' intended line of questioning of the witness was relevant, the Court issued an Order, Doc. 60, denying Defendant's Motion to Quash.

On September 13, 2013, Defendant filed the instant Motion to Amend, Doc. 61, and also a Motion to Expedite Briefing Schedule and Hearing. Doc. 63. Defendant sought allowance to amend to its Countercl., see Doc. 5, to include a claim for fraudulent inducement. See Doc. 61. Defendant asserted that it recently discovered and recognized the importance of a different and more recent personal financial statement concerning Plaintiff Wright's assets than the one he submitted to Bank during the negotiations of the DSA in January-February, 2012. See Doc. 62.

Also on September 16, 2013, Defendant filed the instant Motions to Compel responses from Barnes, Brock, Cornwell & Heilman, PC, Doc. 66, and from Plaintiff John P. Wright, doc. 68, as well as Motions to Expedite the Briefing Schedule and Hearing. Doc. 70. Defendant moved the Court to compel Barnes, the accounting firm that handles Plaintiff Wright's accounting, to turn over documents pertaining to its communications with Stoney Glen, LLC, Plaintiff Keene, Plantiff Wright, and the law firms, (and attorneys) of Williams Mullen, DuretteCrump, PLC or Crowley, Liberatore, Ryan & Brogan PC; and all documents related to Wright's personal financial statements. See Doc. 67.

In the instant Motion to Compel Plaintiff Wright, Defendant moved the Court to require Plaintiff Wright to produce and provide full responses to Interrogatories regarding Wright's Home Equity Line of Credit ("HELOC"); the source and amount of funds Wright used and spent

3

to purchase and improve his real estate holdings; income Wright received, from his father's estate; and information about Wright's more significant asset-transfers within the relevant time period. Doc. 69.

On September 16, 2013, Plaintiffs filed a response in opposition to Defendant's Motion Expedite Briefing Schedule and Hearing. Doc. 65. After considering Defendant's Motions to Expedite, the Court issued an Order, Doc. 74, on September 18, 2013, scheduling a hearing for September 26, 2013 to address all pending matters. Plaintiffs filed a Response in Opposition to Defendant's Motion to Amend, Doc. 77, a Response in Opposition to Defendant's Motion to Compel Responses from Barnes, Doc. 75, and a Response in Opposition to Defendant's Motion to Compel Responses from Plaintiff Wright on September 24, 2013. Doc. 76. Given the expedited nature of the hearing, the Court refused the Defendant the right to file replies to Plaintiffs' responses. Id.

On September 25, 2013, Plaintiffs filed a Motion to Quash Defendant's Subpoena to Dan Griffin, Doc. 78, and a Motion to Quash Defendant's Subpoena to Cooper, Spong & David, PC. Doc. 81. As these matters were pending before the Court, they were also addressed at the September 26, 2013 motions hearing.

## II. LEGAL STANDARDS

### A. Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, where a responsive pleading has been served, "a party may amend [its] pleading only by leave of court or by written consent of the adverse party;" however, "the court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182, (1962). The

4

rule reflects the federal policy of "resolving cases on their merits instead of disposing of them on technicalities." Sciolino v. City of Newport News, Va., 480 F.3d 642, 651 (4th Cir. 2007). A motion to amend should generally be granted "in the absence of an improper motive, such as undue delay, bad faith, or repeated failure to cure a deficiency by amendments previously allowed," Harless v. CSX Hotels, Inc., 389 F.3d 444, 447 (4th Cir. 2004), and "will not be denied unless the amendment will cause actual prejudice to the adverse party." Wall v. Fruehauf Trailer Servs., 123 Fed. Appx. 572, 576 (4th Cir. 2005) (unpublished).

**B.      Motions to Compel**

*1.      Relevance*

Under Federal Rule of Civil Procedure 26, a party may obtain discovery regarding any non-privileged matter that is relevant to a claim or defense in the case. Fed. R. Civ. P. 26(b)(1). Moreover, relevance does not mean that the information has to be admissible at trial, but merely that the requested information is reasonably likely to lead to the discovery of admissible evidence. Id. Discovery "is broad in scope and freely permitted." Mylan Labs. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 1999).

*2.      Overly Burdensome*

The Court can limit discovery requests if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii). To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments. Convertino v. United States Dep't of Justice, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery

is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); Cory v. Aztec Steel Bldg., Inc., 225 F.R.D. 667, 672 (D. Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection).

*3.     Work-Product*

One exception to the liberal standards of the general rule of discovery includes materials prepared "in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Such "work product" materials are only discoverable (1) if "they are otherwise discoverable under Rule 26(b)(1)," and (2) if the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id.

As the Fourth Circuit has explained, "the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity." National Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992) (quotation omitted). Rather, the document must be prepared because of the prospect of litigation—when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

*4.     Privilege*

The privilege exception from discovery "affords confidential communications between lawyer and client complete protection from disclosure." Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). Thus, under federal standards, privileged matters are limited to *only* those

6

communications between attorneys and their clients. "[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases," Couch v. United States, 409 U.S. 322, 335 (1973) (citations omitted).

C.  **Motions to Quash**

Under the Federal Rules, a court may quash or modify a subpoena that either "fails to allow reasonable time to comply," "requires a person who is neither a party nor a party's officer to travel more than 100 miles," "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden." Fed. R. Civ. P. 45 (c)(3)(A). "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." United States v. Idema, 118 Fed. Appx. 740, 744 (4th Cir. 2005); see also Green v. Sauder Mouldings, Inc., 223 F.R.D. 304, 306 (E.D. Va. 2004) (holding plaintiff lacked standing to quash third party subpoena on grounds that report was protected work product).

Although Rule 45 does not list irrelevance as reason for quashing a subpoena, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26. Cook v. Howard, No. 11-1601, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012) (per curiam) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed . . . those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26."); see also Barrington v. Mortgage IT, Inc., 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007) (collecting cases). Thus, regardless of whether Defendant seeks to quash the subpoenas under Rule 45 or to have the Court issue a protective order preventing the production of the subpoenaed material under Rule 26, the Court should utilize the same standard in deciding Defendant's Motion. Sirpal v. Wang, 2012 WL 2880565, at *4 n.12 (construing plaintiff's motion to quash as one for a protective order under Rule 26 and

7

using relevance and overbreadth to quash the subpoena at issue) (citing <u>Wash. v. Thurgood Marshal Acad.</u>, 230 F.R.D. 18, 22 (D.D.C. 2005) (construing defendant's motion to quash subpoena served on third parties as a motion for protective order and applying analysis as it would for a motion to quash)).

### III. DISCUSSION

#### A. Leave to Amend

Defendant requests to Court to grant it leave to amend its CounterCl. based upon facts allegedly learned in discovery supporting a new claim for fraudulent inducement. Specifically, Defendant asserts that it recently gained a more holistic perspective of Plaintiff Wright's existing personal finances at the time the DSA was negotiated based upon deposition testimony and discovery documents.

One such document Defendant relies upon to support instant Motion to Amend includes a different and more recent personal financial statement detailing Plaintiff Wright's assets than the one he submitted to Bank during the negotiation of the DSA in January-February, 2012. See Doc. 62. During the negotiations, Plaintiff Wright allegedly told and provided Bank with what he represented was his most current financial statement, dated June 30, 2011 ("June Statement"); however, in Wrights other, independent dealings with TowneBank in January 2012, Wright provided TowneBank with a personal financial statement from October, 2012 ("October Statement") that depicts Wright's new worth considerably higher; thus, demonstrably contradicting Wright's assertion to Bank and ostensibly providing Bank with the necessary facts for a fraudulent inducement claim. Doc. 62.

In their brief and during oral argument, Plaintiffs argued that Defendant's Motion to Amend is untimely, (thus prejudicial), because it could have been brought at the beginning of discovery when it was produced; and that it is also futile because it cannot survive a challenge to

8

the facts as pled. See Doc. 77. Plaintiffs premises their "untimely" argument on the fact that they turned over the October Statement at the beginning of discovery, and as such, Defendant's proposed Countercl. could have been brought earlier, not after Plaintiffs' discovery cutoff. Id. Plaintiffs also asserted that the fraudulent inducement claim is not akin to Defendant's affirmative defense raised in its Answer—that Bank had a right to cancel the DSA due to Plaintiffs' misrepresentations or omissions concerning their finances. Given these facts, Plaintiffs concluded that they would be highly prejudiced by having to prepare a defense to the claim a month before trial. See id.

The Court rejected this argument as Plaintiffs were highly aware of the existence of the October Statement, and either knew or should have known that such a document, once discovered by Defendant, could give rise to a fraudulent inducement counterclaim. Furthermore, as Plaintiffs' Counsel conceded during the hearing, the only real difference between an affirmative defense and a counterclaim lies in the nature of the remedy each affords. Therefore, it follows that Bank's assertion in the form of an affirmative defense should have provided Plaintiffs with sufficient notice of the need to prepare a counterargument to the issue.

Plaintiffs also contended that the new claim attempts to create a cause of action for fraud in the inducement of negotiations, (not a cognizable legal claim), rather than contract because, by Defendant's own admission, See Doc. 61 (Ex. 9), Bank actually relied on the June Statement to enter the relevant DSA in December, 2012. Thus, by this logic, Bank did not rely upon any misrepresentation by Wright during from February to June, 2012. However, the Court was not persuaded by this logic as Wright's oral representations supposedly concerned the accuracy and recentness of the June Statement, which the Bank relied upon in deciding to commit to the DSA.

Therefore, for the reasons stated above, the Court **FOUND** in favor of the Defendant, and **GRANTED** the Motion to Amend. However, to avoid prejudice to either party, the Court will permit limited further discovery despite the fact that it is after Plaintiffs' discovery cut-off dates.

**B.     Motions to Compel**

1.     Motion to Compel responses from Barnes

Defendant raised several inadequacies associated with Barnes's responses to the subpoena duces tecum. Defendant contended that Barnes's objections based upon attorney-client privilege or work product, unduly burdensome requests, and irrelevance, inhibited their right to access admissible information concerning fundamental documents and communications concerning Plaintiffs' financial statements—statements that are central to the claims at issue in this case. Doc. 67. In their brief, Plaintiffs' argued that Defendant's usage of "related to" constituted overbreadth, and thus made the subpoena unduly burdensome (among other things), See Doc. 75; however, Plaintiffs failed to supply the Court with facts to support these objections, as required. See Cory, 225 F.R.D. at 672. Also, Plaintiffs argued that any request for documents Bank did not rely upon in terminating the DSA constitutes irrelevance because those documents have no bearing upon the Bank's justification for ending the DSA. Id.

Recognizing that "no confidential accountant-client privilege exists under federal law," Couch, 409 U.S. at 335, and relying upon Defendant's counsel's representations to the Court that the scope of discovery sought with regard to Barnes was limited to Stoney Glen and Plaintiff Wright's finances, the Court **GRANTED** Defendant's Motion to Compel Barnes.

2.     Motion to Compel responses from Plaintiff Wright

Defendant requested the Court to compel Plaintiff Wright to respond fully to various interrogatories and requests for production concerning financial assets Wright held both before and after the DSA was negotiated. Doc. 68. Wright objected on the basis of irrelevance, and

again argued that information concerning Plaintiffs' finances after the DSA was terminated could not be relevant and used supply Defendant with *ex post facto* evidence that Bank acted in compliance with good faith and fair dealings requirements— a central issue to this case, as defined by Plaintiffs' Am. Compl. Doc. 76.

The Court disagreed with Plaintiffs, and reminded counsel of the distinction between discoverable information and admissible evidence. Though "pleadings are the starting point from which relevancy and discovery are determined . . . [r]elevancy is not limited by the exact issues identified in the pleadings, . . . [r]ather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes. Robinson v. Quicken Loans, Inc., 2012 WL 6045836, at *2 (S.D. W.Va. Dec. 5, 2012) (internal citations omitted). As such, the Court **FOUND** in favor of the Defendant and **GRANTED** the motion.

C.  **Motions to Quash**

After the pendency of the hearing, Plaintiffs' filed the instant Motions to Quash, Doc. 78, Doc. 80, seeking to keep Defendant from obtaining documents similar to those detailed in Defendant's Motion to Compel. See *infra*. Plaintiffs supported their Motions by incorporating their previous objections to Defendant's Motions to Compel. Doc. 79, 81. As the Court granted Defendant's Motions to Compel over Plaintiffs' objections, Plaintiffs Motions to Quash are **DENIED as MOOT**.

## IV.  CONCLUSION

For the reasons stated herein and on the record at the September 26, 2013 hearing, Defendant's Motion for Leave to Amend and Motions to Compel are **GRANTED**. Plaintiffs' Motions to Quash are **DENIED as MOOT**. The Court further **ORDERS** that the parties be allowed to re-depose witnesses and conduct limited discovery with regard to Defendant's new

claim for fraudulent inducement. The Final Pretrial Conference is reset to November 5, 2013 at 11:00 a.m, and the parties are directed to set a Settlement Conference with Magistrate Judge Leonard on that afternoon.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: September ___, 2013